first case this morning is 23-2363 Davis v. Collins. Nice to see you again. Hello, Judge Prost. Good to see you too. All right. Good morning. Kenny Villahocas for the appellant. On behalf of Mr. Davis, I want to thank this court for the opportunity to present his appeal. We're here today because, once again, the Veterans Court has ignored precedent on constructive possession. The standard, as announced in Lange and Eusebio, is that the board must consider any evidence that predates the decision, is within the Secretary's control, and is relevant and reasonably connected to the veteran's claim. I want to emphasize that the standard is relevant and reasonably connected to the claim. And I think a lot of where the court went wrong is in misconstruing that phrase. The Veterans Court ran afoul of the standard when it started asking whether it would be reasonable that a specific adjudicator would have investigated, gathered, or put evidence in the record. But here, at least with two of the pieces of evidence, Mr. Davis told the board, before their decision, of the existence of the evidence and why he thought it was relevant and reasonably connected to his claim. Counsel, why is this not a classic example of a case applying the law to the best? No, Your Honor. I know that the Secretary argued that, but what we see here is that the Veterans Court is layering on additional requirements for evidence in order to be constructively part of the record. For example, the Veterans Court, with, again, two of the pieces of evidence, the GAO report and the letters that his attorney sent to the board. And I'm looking on page 11 of the appendix. Prior to Mr. Davis' 2019 out-of-time submission, he did not mention the GAO report. And then on page 12, again, prior to the 2019 submission, there was nothing in the record mentioning irregular mailings or irregular mailings to his counsel. This is resurrecting, as we argued in our brief, a triggering principle that was rejected by Lane. There is no requirement in law that a veteran has to raise a specific argument before a specific time. The Veterans Court here stopped looking at the filing of the notice of disagreement for any kind of argument that would potentially raise to the board this evidence. But as we, again, we outlined in our brief, the statutes very clearly require the board to consider the entire record and apply all applicable laws at 7104A. This Court and Tom has talked in great length about the meaning of that and what are applicable laws. Your argument is that evidence is reasonably connected to the claim if it's relevant. Not necessarily, Your Honor. What meaning, how do you know if, just assume for purposes of argument, that this room contains all the evidence that is in the possession of the Veterans Administration, period. Millions and millions of pieces of information. And let's assume that in that millions and millions of pieces of information, there are several very relevant, i.e., probative of truth or falsehood of your veteran's claim. So how did that mass of information, there has to be some magnet, something that attracts somebody's attention to this piece of information to find it reasonably connected? Right, Your Honor. So I think that there's two ways we can look at this. Number one. Just let me finish. I'm sorry. What's the magnet? And we know that the test, which has been around forever, right? The test that comes out of the two old VA cases and then when Lange and Subio were adopted here, right? And that test was correctly stated by the CABC. They said this is the test we're going to apply. And so they were looking to see what is there that your client told the agency that there was this magnet that would attract the adjudicator to this evidence. And they basically said all you had done was to say we didn't get a letter from the RO on the claim being denied. Right? That's the evidence in the record that supposedly is going to attract the attention of the adjudicator to these letters and to the GAO report. Correct, Your Honor. That's what the Veterans Court said. And the Veterans Court said here that's too tenuous, as we've said in other cases. The connection to the veterans' claim, the veterans' claim is that there is a rebuttal of the presumption of regularity. The veterans' claim is that the usual rule that you're stuck with a mailing doesn't apply here because we have all this evidence of irregular mailings. Right? But the finding was that it was that your connection, i.e., I just didn't get the letter, doesn't connect up to the rebuttal argument. And why isn't that a question of fact? Why isn't that something that the law left to the CAVC to decide in close or difficult cases sort of where the margin falls? The reason, Your Honor, is because at least, again, with these two pieces of evidence, the GAO report and the letter that Mr. Davis' counsel sent with respect to the counsel's irregular mailing was presented to the Board before its decision. And the Veterans Court ignored that and said you didn't... Your Honor, the Veterans Court also said with regard to the GAO report that it basically is irrelevant because it doesn't really deal with the question of irregular mailing. And so you've got that hill to climb with regard to the GAO report. I would agree your argument is a little more pointed with regard to counsel's letters addressed to the director of the BVA and some financial administrator, correct? Correct, Your Honor. But I would dispute whether the court called the GAO report not relevant. I don't think that it was clear in their decision. Even if relevant? I'm sorry, Your Honor? You can disagree with that. The government obviously disagrees with you on that point. Right. They feel that the CAVC made pretty clear that the GAO report... Right, but nonetheless, the Veterans Court did assume that it was relevant and then said this is not constructively before the record in large degree because Mr. Davis didn't tell the VA about the GAO report or about mailing irregularities until after his NOD was filed. He hadn't tipped them off that this was related to his argument. But he did before the Board's decision. And that's where the Veterans Court decision is contrary to the law. In Lange and Eusebio, the evidence was not mentioned at the Veterans Court. And this court had no problem, particularly in Lange, finding that the evidence was constructively before the Board when it made its decision. And Lange is even more further afield because the issue in Lange was whether there was a CUE in a 1996 decision. The Board found there was not. At the Veterans Court, Mr. Lange's attorney discovered this evidence and said, hey, this might affect the finality such that CUE wouldn't apply. This court overturned the Veterans Court and said, yes, 20-plus-year-old evidence that was made by a VHA examiner was constructively before the Board at that time, even though it had nothing to do necessarily with CUE, but because it was reasonably connected to the veterans' claim at that time. And so the idea that we have to tell the VA about the existence of an argument or evidence is not grounded in law as we see in both Eusebio and Lange. Well, in Eusebio, it was clearly connected to what was the matter that was being adjudicated, right? I agree, Your Honor. Yes. That evidence certainly was. And here again, the argument is, is that there was an irregularity in the mailing, and this evidence, at least the letters that Mr. Davis's attorney sent in, we, of course, think this GAO report is also relevant, but even the other evidence, the Chisholm and Raber affidavits, which were, again, we see in Romero that it was received before the May 2019 Board decision that was that predates the June 2019 decision in our case. So the Board had that evidence. And even if the Chisholm affidavit doesn't, the Raber affidavit identified well over 1,000, and I have it here, but I apologize it's not right here, but well over 1,000, I think maybe even 2,000 cases of veteran attorneys throughout the country, not just Chisholm, Chisholm, and Kirkpatrick, but other attorneys throughout, here it is, 2,072 examples of mailing failures from multiple representatives accredited to represent claimants before the VA. That kind of evidence is certainly reasonably connected to Mr. Davis's assertion that he or his attorney did not get the mailing in 2016. The time periods overlap. The exact same contentions were made, and it was a prevalent problem during that time period, and the VA has conceded that. And I think in Eusebio there was a mention of that during oral argument. But regardless, this is how the evidence is reasonably connected to Mr. Davis's claim. And going back to Eusebio, the NAS report was not given to VA for any particular veteran's claim. The Veterans Court in our case here leaned on that in particular for the Rabor and the Chisholm affidavits to say that it was not of some ilk like the NAS, and that it was not given to the VA for any particular claim or this veteran's claim. That inquiry, again, is irrelevant to whether it's reasonably connected to Mr. Davis's claim. You seem to place a lot of emphasis on the fact that this evidence, that the Board had it. Did you submit it as evidence before the Board? Two of them we did, Your Honor. The JAO report was produced well before the decision. We just provided them with a copy of it and said, hey, we want you to consider this when you're looking at our appeal. But you provided it. They got it after your window was closed for submitting additional evidence, did they not? Well, we alerted them to it after the window had closed. But the evidence was given to the VA before the decision, the AOJ's decision, which was the statement of the case. And I noted in my brief that there is a question about whether the letters that we sent. How was the JAO letter given, the JAO report? I know the letters were actually mailed to the head of the BVA and to some administrative financial officer. But how did the JAO report get from your hands to the agency? Two ways, Your Honor. In Romero, that same exact JAO report was given to the VA. But the JAO itself. No, no. I'm trying to find out the point in time. You're saying your December 19th submission? That's when we alerted the Board to its existence and relevance. The JAO gave it to the VA years before when they were reviewing the VA's mailing. I think the presiding judge was asking when you had given the information. We submitted a copy of it in December of 2019, which was after the date that the record closed. But, again, the VA had that. The JAO gave a copy of that. Isn't your argument that the fact that the record closes is basically irrelevant to the question of constructive possession? It is, Your Honor, because, again, so long as it — If the record hadn't closed, then thank you. The evidence is in and you're home free. Correct, Your Honor. You're relying on constructive possession because the record closed. Correct, Your Honor. And you had an argument about why the record wasn't closed, but you're not pursuing that here. Correct, Your Honor. And, again, the standard in both Lange and Eusebio is that it predates the decision, which all of these do. Again, there's — you know, we have to get around 3.156B with respect to the letters. The Court didn't address that, so that's not something that this — they seem to have assumed in their decision that it was. Well, the board decision was safe. The CAVC decision was based on the reasonably connected issue. That element of intent, at least with regard to the letters. More or less, Your Honor. And I see that I'm into my rebuttal time. I would like to just save some of that for rebuttal. Thank you.  Good morning, Your Honors, and may it please the Court. Having missed the deadline to submit additional evidence to the board, Mr. Davis now seeks to shift the burden to the board and contends that the board was obligated to have discovered and included these three pieces of evidence at issue in its consideration of Mr. Davis' claims. But as an initial — So why wasn't, in December of 2019, before the board issued its decision in this case, saying that he had failed to rebut the presumption of regularity, he had submitted to the board both his correspondence and the GAO report, correct? He submitted them to the board outside of — outside of the 90-day window. Well, forget about that. I'm sorry? Forget about that. Well — If he submitted within the 90 days, he would be home free, correct? Correct, Your Honor. Correct. So the — presumably, in a constructive possession case, as in all the other cases, for example, in Escambio, in the cases where the evidence was being presented to the CAVC, it was obviously after the record had closed. That was the problem. Your Honor, I think that there's a little bit of — Just answer my question. Yeah. Why isn't the December 19th submission sufficient to have put the evidence in front of the board? Because, Your Honor, the doctrine of constructive possession is a legacy — that would apply before the AMA was in place. So once Mr. Davis here opted into the AMA in August of 2019, the constructive possession doctrine would no longer apply to the evidence at issue. At all? Correct, Your Honor. Why are we here talking about it? Well, because, Your Honor, Mr. Davis has argued that even prior to his opt-in, the board was obligated to have constructively possessed the doctrine — the documents at issue. But — But when did they opt in? In August of 2019, Your Honor. So the — And when was the board decision? The board decision was in July of 2020. So the submission that Mr. Davis provided in December — Wasn't his case pending before the board in August of 2019? It was, Your Honor. It was — he submitted his notice of disagreement in December of 2019. If his case was pending in 2019, then why isn't the constructive possession doctrine applicable? It's here, right? The constructive possession doctrine, again, is a legacy doctrine which applies before the AMA opt-in. So we're here to discuss whether these documents should have been constructively possessed by the board prior to August of 2019. But in his submission in December of 2019, the AMA — the AMA rules would apply. And that's why, having missed the window of submitting evidence to the board from — of the AMA regulations, Mr. Davis is now trying to argue that the board should have constructively possessed the doctrine or constructively possessed the documents prior to August. But if Mr. Davis could submit evidence at any time, regardless of the 90-day window, and have that be an argument in favor of constructive possession, then the AMA 90-day window would essentially have no meaning at that point. And so once — Okay. And that's what the CABC said at the end of its opinion? Correct, Your Honor. Yes. Yeah. Can I ask — you also offer up kind of a harmless error argument at the end. And I think in gray, your friend kind of points out that if he files a supplemental claim, he could only include new and material — new and relevant evidence. And so presumably, I assumed, I understood, to be your position, that you would not concede that this was new and relevant evidence. Your Honor, we would not concede that the evidence is new or relevant, but an adjudicator — another adjudicator before the board might have a different take on whether the evidence is new or material. But to the extent Mr. Davis has new and relevant evidence, he can — Why is it not new and material? Well, again, the Veterans Court in this case and the board found that these documents were simply not relevant to Mr. Davis' claims. That doesn't have anything to do with whether it's new and material. Right, which is why we — Let's just talk about the letters. Yeah. Why aren't the two letters new and material? Well, in this case, there was no consideration as to whether the documents were new and material because, again, we were considering them under contractual possession. Well, I mean, he's — the — here, Mr. — Mr. Zolkoff has said he's willing to accept your invitation to file a new claim if you'll make a concession. Well, the — I mean, I can't speculate, Your Honor, at this time whether an adjudicator in the VA would consider those documents to be new and material for purposes of a supplemental claim because that isn't what the board or the Veterans Court considered. Well, you're capable as an agent of the government to make that decision if you wish. Well, Your Honor, I — Why are they not new and material? I can't stand here and say that they are not new and material because it isn't something that the Veterans Court or the board considered because, again, that isn't what was presented to them. But in this case, the Veterans Court did apply the — You're offering your brief that there was a way out of this was illusory? Well — Well, you knew what he was going to say. No, Your Honor, I don't believe it was illusory because Mr. Davis is free to, after this case is over, to submit a new — a supplemental claim and raise the argument that the evidence is new and material. I, standing here today, though, wouldn't want to — wouldn't want to speculate as to whether an adjudicator would agree that the evidence is actually new or material. But — So, in other words, you can't say that it's harmless? Yeah. That's the only point of what you said. Yes, Your Honor. Whether it matters in this case is another question. But in this case, this Court, as an initial matter, lacks jurisdiction because the court — the Veterans Court simply applied the UCPS standard to the facts of Mr. Davis's case. And he simply disagrees with the results here. What's your response to the claim he made 10 minutes ago, which is that it or the board misconstrued the standard under the case law? We would disagree that the Veterans Court misapplied the standard or misconstrued the standard. The Eusebio standard reaffirms that the constructive possession standard, as discussed in — laying in in Bell and in Bowie, those — that standard is the correct standard. It is whether the evidence was within the Secretary's control and whether it is reasonably expected to be part of the record. And — Well, that's — that's how you decide whether it's reasonably connected? Correct. It's a two-thing. It's reasonably connected, and you prove it's reasonably connected, yes or no, by whether you would have expected it to be in the record. And that's, again, the question. How do you — how do you draw out of the millions and millions of pieces of information something? That — that is correct, Your Honor. And I — Mr. Davis here has read that reasonably — Mr. Davis has read that that's a trigger. By — by putting some burden on the veteran to do something, hand-jive or something, to attract the attention of an adjudicator to this piece of information, this needle in the haystack, he's arguing that that burden being put on the veteran to send some signal somehow, something more than just saying, I didn't get the message, I didn't get the thing. Now, why isn't that a trigger? The — Your Honor, the — the triggering that it would have to be relevant to a specific veteran's claim isn't what the Veterans Court did here. But there — there does have to be something more than relevance. Well, the decision here essentially was that this isn't — the two letters are not reasonably connected to his claim. That's correct, Your Honor. We have to decide what is his claim. His claim is that the presumption of regularity was rebutted in this case. Well, Your Honor, the claim that he raised before the board was that he did not receive the notice of disagreement. That's what I'm trying to get to you. So that — if — if that's his claim, right, that he didn't get it, the question is, did that put the agency on notice that he was talking about a larger issue than not just getting it? He could have not gotten it for a whole lot of reasons. Your Honor, and — and applying the Eusebius standard, the Veterans Court — And Mr. — and Mr. Goldberg is saying that constitutes a trigger. No, Your Honor, I would disagree with that. I would think it would be. If so, that undermines the — you have to find — you have — there's something has to trigger a reason why there's a reasonable connection between the evidence incident and morass. Yes, Your Honor, there has to be something more than — than just relevance. It has to be relevant and reasonably expected to be part of the record. And Mr. Davis, in page 17 of his brief, argues for simply a relevance standard that's disconnected from whether it's reasonably expected to be part of the record. And here, the Veterans Court — the board found that it was not reasonable for these — these pieces of evidence to be part of the record in this case. There — there is no reasonable connection to the veterans' claims here, and that's why the board ultimately — And what is the veterans' claim? That he did not receive the 2016 AOJ decision, and — and that his — his notice of disagreement should be considered timely, despite having failed to file the notice   But under the law, his claim that he didn't get it on time is — has no meaning, right, unless he's trying to argue that the presumption of regularity on government mailing doesn't apply. Well, Your Honor, again, this — this goes ultimately to the conclusions of the Veterans Court drew, but the — but their — but that would be the application of law to fact, which, again, is something that this Court would not have jurisdiction to review. So the Veterans Court, appropriately applying the Eusebio standard, looked for there to be a connection more than just relevance, and didn't find it. And any argument that the Veterans Court was wrong in that decision would be an application of law to fact. But the — but the Veterans Court here correctly applied the standard of the — of Eusebio, which is not simply a relevant standard. It is relevant and reasonably expected. And the question in this case is, how do you decide if something — some — as I say, I like to think of this room connecting all this information. There are close to a billion bits of information, and we're trying to pick this one — these two letters out of that. There has to be something that forces you to say it's connected. Yes, Your Honor. And the conclusions of the Veterans Court about whether it was or wasn't reasonably connected is an application of the law to the fact. But — but that's not a question for this Court. So really, as long as — as long as the Veterans Court applied — correctly applied both parts of the standard, that there has to be both relevance and that the evidence has to be reasonably expected to be part of the record — Let me ask you this question. Assume that we had a case like this one in which the question was whether or not it was reasonably connected. And the record actually showed that the document was — the two letters were in the possession of the BVA deciding this case. Just assume that for a moment. And yet the BVA gave the same decision, saying, no, no, didn't look at the evidence. It goes up to the CAVC, and the CAVC affirms. So the CAVC writes a clearly wrong opinion in which they say, oh, no, no, there is no reasonably connection, even though there clearly was. And it comes up to us, and it's patently clear we still cannot reach that case? Well, Your Honor, I think that would be more of a — more similar to the Lange case that this Court decided in 2020, where there was clear evidence in the record, and the Court ultimately concluded that it — that there was — But you said that wasn't a question about the evidence being in front of the board. What I'm talking about is, I mean, whenever you say it's an application of law to fact, the thing that troubles me is what happens if we all know that the CAVC blew it and made a 100 percent wrong decision on the facts? Are we still hamstring? I'm still — I'm terribly sorry. I know that there was constructive position, but there's nothing we can do, because under your view, we can't look at the facts under the reasonable connection? Well, Your Honor, under — under 7292, this Court doesn't have jurisdiction to review the application of law to fact. So to the extent that a case — Do you have a case in which the agency would even admit that there was a factual error committed by the CAVC? I believe even under that hypothetical, Your Honor, that this Court would be bound by its own jurisdictional mandate. But that isn't the situation. And what would be the best vehicle to correct the situation? Recognizing potentially that our Court might not have jurisdiction, what would you say would be the best vehicle to correct it? Your Honor, to the extent that Mr. Davis believes he has new material evidence, I believe that the remedy for him under the AMA that he opted into would be to file a supplemental claim or to pursue a Q claim, if that would be appropriate. And if he had chosen not to opt into the AMA, would you believe that he would be differently positioned in front of our Court right now? Arguably, Your Honor, because the constructive possession doctrine, again, is a legacy — is a legacy doctrine. So if he had not opted into the AMA, it may very well apply further on down the road. But once he opted into the AMA, the AMA regulations and statutes apply and govern explicitly when evidence can be submitted and how. And Mr. Davis admittedly, conceitedly, missed that 90-day window for submitting evidence that the AMA provided him. The last question I have for you is, counsel was talking a lot about Eusebio and also Lange. I think you were starting to distinguish Lange. Is there further distinctions you want to draw with respect to that case before you sit down? Well, Your Honor, Lange had to do with the veteran's own medical records. And this Court drew a very different line there. And I think Eusebio is also distinguishable because it had to do — because the Court explained that it was — they were well-known NAS reports that were specifically commissioned by Congress to look into these types of — the connection between the diseases and the Agent Orange. And so these are just very different types of documents that the Court has found constructively possessed than the GAO report and the letters that we have in this case. Thank you. If Your Honors have any further questions, otherwise we request that the Veterans Court be affirmed here. Thank you. Thank you, Your Honor. You don't really — you said you — or we find we don't have jurisdiction. Well, yeah. Will we, Stuart? Two minutes. Two. Okay. I hope that's enough time. There's a lot here. I'll just start by saying that the Secretary's assertion that a constructive possession doesn't exist in AMA is not anywhere in their brief. And we would ask this Court to either order additional briefing on that point because this is the first we're hearing of this. The Veterans Court and the Secretary in their briefing said that they correctly applied constructive possession. So I don't think that that's an issue. Two, the Board didn't say — the Secretary argued that the Board said the evidence was not relevant and then later said it was not. They never did. The Board never addressed this evidence, so there are no findings by the Board on their relevance. Which evidence are you talking about? Any of it, Your Honor. And so — and Judge Clevenger, to your question, you started getting — Presumably they think that the letters are relevant because they only discussed the other test. I think that's — yes. Yes, Your Honor. I think that, at least from the Veterans Court perspective, they seem to be relevant. But how do we determine which relevant evidence is reasonably connected? And you asked this question. We didn't get to completely answer it, but I think that there's at least two situations where we can point to that say, yes, this is — in all the world of relevant evidence, these are at least reasonably connected. One is here where we tell the Board, hey, this evidence is out there. It's not like it's a mystery. We actually provided them copies of it. And so at least where the veteran tells the VA, not with the NOD, but any time prior to the Board's decision, it's reasonably connected. And then, of course, if it's relevant, then it's constructively before the Board. The veteran — But then the question here is whether or not when you say, oh, I didn't get a mailing from the RO, whether that is basically an argument that you're trying to rebut the presumption. Right, Your Honor. Yes. And that's where — that's the cusp right here, isn't it? Well, it is, but it's not, Your Honor. The Veterans Court — again, I want to go back to what they said. And this is, I think, the clearest mark of whether a decision is wrong. Instead, in his 2008 purported NOD, January 2009 OD, only asserted — You're reading from a page. What page are you on? I'm sorry. Appendix 12, Your Honor. They only said they didn't get it. Right? He did not receive. Did not receive the decision. And then he says, With no suggestion of a pattern of VA mailing irregularity with regard to his counsel and no suggestion of a more general problem with VA mailings, it would not be reasonable for the Board, etc. But he did tell the Board. In that sitting, there was no suggestion that what he's really talking about is a breakdown in the mailing, and because of the breakdown in the mailing, the presumption of irregularity doesn't apply. Right. But Mr. Davis did tell the Board that. He told the Board that in December 2019. Yes, it was after the NOD. But again, the statute, 7104A, requires the Board. Secretary's own regulations when they implemented the AMA said there's nothing about it. And that gets into this legacy issue of whether it was too late on the decision. The explanation at the very end of the CBC opinion is if we allow the December 2019 ruling to come into play, it eviscerates, yada, yada, yada. But, Your Honor, the argument was that he didn't get it. He's allowed it, and I don't have the quote on hand, but there is a case from this Court that talks about refining the argument before the Board after the filing of the appeal. Mr. Davis is authorized by statute, by the VA's regulation, as noted in the Federal Register Final Rule, that he can present argument. His argument was that it was rebutting the presumption. The Veterans Court disregarded the evidence because he didn't put it in his NOD. But that's not the law. He's allowed to refine the argument. He did so in December 2019. The evidence is otherwise. This case shows, as I'm sure you know from your wide experience, that whether or not a particular piece of evidence is going to be reasonably connected to this whole test, is reasonable minds could differ on that. And in the order of things, the way Congress set up the review structure here, we're not allowed, we're not supposed to overhaul factual determinations that are made by the CBC. Those judges do this all the time. That's all they do. Right? And so why isn't it correct that on an issue like this where the facts can vary from case to case, that Congress didn't properly put that discretion in the hands of the CBC and not in ours? Because you're basically asking us to disagree with the decision by the distinguished CBC judges that they made a mistake here on the reasonably connected. I am not, Your Honor. I'm saying that they looked at it through the wrong lens. They didn't apply the incorrect law. And my argument is, is that if they do it under the correct law, there's a good chance that they will come out in favor. But you can't, you haven't told me how you state the reasonably connected test so as to come out your way instead of the way they came out. Well, I would urge this Court to find that if the veteran tells the VA that something exists and provides them a copy of it that predated it, predated the decision, it's reasonably connected as a matter of law. There's just no reasonable argument that the veterans, that the VA shouldn't have to address evidence that the veteran tells them exists. And similar to Lane, this Court held that VA's own medical records for that veteran are always relevant and always reasonably connected. Is this fundamentally a duty-to-assist case? Is this really, and the whole destructive possession doctrine comes out of or it grows out of the duty-to-assist, right? Well, Eusebio certainly referred to that, Your Honor. That's where it comes from. It does. Helping the veteran. And my response to that is, is that the statute, Your Honor, says any relevant records, relevant records held by a Federal department or agency that the claimant adequately identifies is the VA has a duty-to-assist in obtaining that. And that's 5103A. I believe it's C3C. C1C, sorry. But these are in the possession again. There's no – the Secretary seems to concede that the VA had control of these, this evidence. Your Honor. Yes, Your Honor. I appreciate it. Thank you. We thank both sides. The case is submitted.